| | |
|---|---|
| LINDA FELIX,<br><br>      Plaintiff,<br><br>v.<br><br>The TOWN OF KINGSTON, ROBERT FENNESSY, Town Administrator for the Town of Kingston, the Board of Selectmen of the Town of Kingston, ELAINE FIORE, DENNIS RANDALL, and SANDY McFARLAND [sic][1], as individuals and in their official capacities as members of the Board of Selectmen, THOMAS CROCE as an individual and in his capacity as a member of the Council on Aging, and FLORENCE CERULLO,<br><br>      Defendants. | No. 15-CV-14022-DLC |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Cabell, U.S.M.J.

## I. INTRODUCTION

The Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612, entitles eligible employees to take up to 12 weeks of leave to address medical concerns. Plaintiff Linda Felix availed herself

---

[1] The caption reflects the defendants as originally named in the plaintiff's complaint but the correct spelling based on evidence in the record is actually "MacFarlane."

of such leave with the assent of her employer, the Town of Kingston (the Town). Felix's position, a term position subject to reappointment, expired while she was on leave, and she was not reappointed to the position or selected to interview when the Town set about to refill it. Felix brings claims for violation of the FMLA, Massachusetts' employment discrimination statute, M.G.L. c. 151B, its whistleblower protection statute, M.G.L. c. 149, § 185, and also alleges various state common law torts. The defendants move for summary judgment on all counts. For the reasons discussed below, the defendant's motion for summary judgment is **GRANTED**.

## II. THE PARTIES

The plaintiff worked for the Town from August 2010 to January 2014.

Defendant Robert Fennessy was at all relevant times the Town Administrator and the plaintiff's direct supervisor.

Defendants Elaine Fiore, Dennis Randall, and Sandy MacFarlane were at all relevant times members of the Town's Board of Selectmen (the Board). Randall also served as a member of the Council on Aging (COA) for a period of time before becoming a selectman.

Defendant Thomas Croce, now deceased, was at all relevant times a member of the COA.

Defendant Florence Cerullo conducted a review of the Senior Center at the Board's request.

## III. RELEVANT FACTS

In 2010, the Board appointed Felix as the Town's Director of Elder Affairs (Director) for a term to run from August 2010 through June 30, 2011. Defendants' Concise Statement of Undisputed Material Facts in Support of Summary Judgment (Defendants' SUF), at ¶ 1. In order for Felix to serve for another term after that date the Board would have to reappoint her. Defendants' SUF, at ¶ 3. In fact, the Board reappointed Felix to two subsequent one-year terms; the first ran until June 30, 2012, and the second ran until June 30, 2013. Defendants' SUF, ¶ 4.

At some point following her initial appointment Felix became aware that a Senior Center employee, defendant Croce's wife, was allegedly taking illegal paid vacations. The Plaintiff's Undisputed Facts in Response to the Defendants' Motion for Summary Judgment (Plaintiff's SUF), at ¶ 1.[2] The plaintiff reported these findings to the acting town administrator. Id. This report caused some friction between the plaintiff and Croce, who directed policy for the Senior Center as a member of the COA. Id., at ¶ 2; Defendants' SUF, at ¶ 5.

---

[2] The plaintiff's memorandum asserts background facts but fails for many of those asserted facts to list them in her Statement of Facts, and portions of the Statement of Facts fail to contain citations to the record. The court has considered only those facts which are undisputed and supported by evidence in the record.

Further disagreements between the plaintiff and COA members regarding the Senior Center's operations developed over the next two years. Defendants' SUF, ¶ 6-10. The COA does not have authority to hire or fire the Director but it does provide the Board with recommendations regarding appointments. Id., at ¶ 11. In May 2013, the COA voted to recommend that the plaintiff not be reappointed for another term. Id., at ¶ 12.

The plaintiff was never formally disciplined or "written up" during her employment with the Town. Plaintiff's SUF, at ¶ 3. However, given developing tension between the plaintiff and the COA over the COA's recommendation, the Board in June 2013 voted to reappoint the plaintiff, but only for a six-month term ending December 31, 2013, rather than for a full year. Defendants' SUF, at ¶ 15, 18.

On July 1, 2013, the plaintiff through her counsel sent a letter to the Town's labor counsel. The plaintiff cited the issues she was having with COA members and specifically mentioned her belief that Croce's role in directing policy for the Senior Center while his wife was employed there presented a conflict of interest. Id., at ¶ 24; Plaintiff's SUF, at ¶ 4.

In August 2013, Fennessy was hired as Town Administrator; he oversaw the Town's human resource functions among other responsibilities. Defendants' SUF, at ¶ 26-27. Fennessy noticed

immediately that the plaintiff and COA members would quickly become very upset and antagonistic when dealing with one another. Id., at ¶ 29-30. Fennessy met with the plaintiff several times to discuss how she might improve her relationship with the COA moving forward. Id., at ¶ 31.

During the summer of 2013, defendant Cerullo undertook at the Board's request an efficiency review of the various Town departments, including the COA and the Senior Center. Id., at ¶ 21-23. Cerullo completed her review in September 2013 and prepared a document outlining her findings. Id., at ¶ 32.

At a meeting that same month, the COA happened to discuss the status of funds the plaintiff's daughter had raised for the Senior Center. Id., at ¶ 33. The plaintiff believed Board member Randall and COA member Croce were unappreciative of her daughter's help and were accusingly questioning how the money had been used. Id.

Also during September 2013, the plaintiff told Fennessy that Randall had been taking meals from the Senior Center without paying for them. Id., at ¶ 34.

At the COA's October 2013 meeting, the topic of the plaintiff's daughter's use of the raised funds came up again. Id., at ¶ 36. The plaintiff became upset and told Fennessy that she needed to go home. Id., at ¶ 37. The plaintiff took some sick days following the meeting and was treated by her physician with

prescribed medication for anxiety.  Id., at ¶ 38; Plaintiff's SUF, at ¶ 7.  The plaintiff subsequently received workers' compensation benefits due to emotional distress.  Defendants' SUF, at ¶ 40; Plaintiff's SUF, at ¶ 6.

On October 28, 2013, the plaintiff submitted a request for FMLA leave.  Plaintiff's SUF, at ¶ 8; Defendants' SUF, at ¶ 41. By letter dated the next day, Fennessy granted the plaintiff's request for the maximum twelve-week period, from October 28, 2013 to January 20, 2014.  Plaintiff's SUF, at ¶ 9; Defendants' SUF, at ¶ 43-44.  Fennessy's letter also stated that "[w]hen your leave is completed, you will be entitled to be restored to your current position or an equivalent position with equivalent benefits, pay and other terms and conditions of employment.  However, you will not have any greater rights to restoration or benefits that you would have had if you had remained employed during the leave period."  Plaintiff's SUF, at ¶ 10.

As the plaintiff's six-month term neared its end, the Board did not hold a vote on whether to extend her term beyond December 31, 2013.  Id., at ¶ 11; Defendants' SUF, at ¶ 45.  Consequently, the plaintiff's term expired as of January 1, 2014, even though she was still to be out on FMLA leave for another three weeks, through January 20, 2014.

It appears that no one initially fully comprehended that the Board's failure to vote on Felix's reappointment (one way or the other) meant that she was, effective January 1, 2014, on medical leave from a position she no longer held. The Town's labor counsel, for example, emailed the plaintiff's counsel on January 16, 2014, seeking an update on whether and when the plaintiff intended to return to work given that her medical leave period was nearing its end. Plaintiff's SUF, at ¶ 13; Defendants' SUF, at ¶ 49. Similarly, the plaintiff's counsel responded that the plaintiff did intend to return to work and asked for information on applying for reasonable accommodations. Plaintiff's SUF, at ¶ 14; Defendants' SUF, at ¶ 50. (The plaintiff never submitted any documentation that she would be able to return to work with or without accommodation.) Defendants' SUF, at ¶ 51.

However, it did not take long for the mutual realization to sink in. On February 6, 2014, the Town's counsel informed the plaintiff's counsel that her employment had ended because her term had expired, and that she would need to request reappointment from the Board. Plaintiff's SUF, at ¶ 15; Defendants' SUF, at ¶ 52. The Town's counsel also suggested that the plaintiff discuss with her doctor whatever accommodations she would need and forward those to the Town. Id.

On February 10, 2014, the plaintiff's counsel notified the Town's counsel that the plaintiff "would like to continue as Director of Elder Services." Plaintiff's SUF, at ¶ 16; Defendants' SUF, at ¶ 53. On the same day, the Town's counsel reiterated that the plaintiff's appointment had ended and that she would need to reapply for the position. Defendants' SUF, at ¶ 54. Town Administrator Fennessy subsequently sent the plaintiff a formal notice informing her that her employment had ended but that she could apply for the vacant position. Plaintiff's SUF, at ¶ 23; Defendants' SUF, at ¶ 55-56.

Between February and April 2014, the Town proceeded to select and appoint a new Director. Plaintiff's SUF, at ¶ 22, 24; Defendants' SUF, at ¶ 58-62. The Town advertised the vacancy and a screening committee composed of Fennessy and two other town officials reviewed resumes, discussed the candidates, and chose three applicants to interview. Defendants' SUF, at ¶ 58-60. The plaintiff applied but was not one of those chosen to interview. Id., at ¶ 60. The committee ultimately chose to recommend an applicant whose professional experience did not include managing a COA but whose references provided great recommendations. Plaintiff's SUF, at ¶ 24; Defendants' SUF, at ¶ 61. The committee forwarded materials for all applicants to the Board with its recommendation, and the Board voted on April 22, 2014 to appoint

the successful applicant for a six-month probationary period. Defendants' SUF, at ¶ 61-62.

## IV. THE PLAINTIFF'S CLAIMS

The plaintiff asserts both statutory and common law claims.

Regarding her statutory claims, the plaintiff alleges that the defendants violated the FMLA by failing to allow her to return to work following her FMLA leave, and by retaliating against her for taking FMLA leave, presumably by not allowing her to return to work or by not selecting her to interview for the vacant Director position. The plaintiff also alleges that the defendants violated the state whistleblower statute, M.G.L. c. 149, § 185, by retaliating against her for disclosing the unlawful conduct of other Town officials. Finally, the plaintiff alleges that the defendants discriminated against her on the basis of handicap, in violation of M.G.L. c. 151B.

With respect to her common law claims, the plaintiff alleges both intentional and negligent infliction of emotional distress (IIED and NIED, respectively), and intentional interference with advantageous business relations.

## V. LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "assert[ing] the absence of a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).  Once the moving party meets that burden, in order to avoid summary judgment, the opposing party must "show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (quoting *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005)). Indeed, the opposing party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (quoting *Triangle Trading Co. v. Robroy Indus. Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).

When determining whether summary judgment is appropriate, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (citing *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted).

## VI. DISCUSSION

### A. The FMLA Claims

Felix contends that the defendants violated the FMLA in two ways. First, they failed to allow her to return to her position as Director when her FMLA leave ended. Second, they retaliated against her for taking FMLA leave by allowing her term of appointment to expire without voting on her reappointment, and by declining to interview her when she reapplied for the position.

#### 1. Interference

Regarding the plaintiff's first claim, the FMLA entitles eligible employees to take up to a maximum of twelve weeks of leave for a personal or medical reason. 29 U.S.C. § 2612(a)(1)(D). An employee who takes FMLA leave is entitled to return to the same or an equivalent position. 29 U.S.C. § 2614(a)(1)(A)-(B). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]," 29 U.S.C. § 2651(a)(1), or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful [by the FMLA]." 29 U.S.C. § 2615(a)(2). Employers who violate the FMLA are liable to the employee for damages and such

equitable relief as may be appropriate.  29 U.S.C. § 2617(a)(1).
To establish a claim for FMLA interference, a plaintiff must show:
(1) she was eligible for the FMLA's protections; (2) her employer
was covered by the FMLA; (3) she was entitled to leave under the
FMLA; (4) she gave her employer notice of her intention to take
leave; and (5) her employer denied her FMLA benefits to which she
was entitled.  *Carrero-Ojeda v. Autoridad de Energia Electrica*,
755 F.3d 711, 722 n.8 (1st Cir. 2014).

Applied here, the parties do not dispute that (1) the
plaintiff was eligible for the FMLA's protections, (2) the Town as
her employer was covered by the FMLA, (3) the plaintiff was
entitled to leave under the FMLA, and (4) she gave the Town notice
of her intention to take leave.  However, as it relates to the
last element --the denial of FMLA benefits to which she was
entitled, the plaintiff cannot prove that element on these facts.

The FMLA instructs that an employee is not entitled to "any
right, benefit, or position of employment other than . . . [those]
to which the employee would have been entitled had the employee
not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  Where, for
example, "an employee was hired for a specific term, . . . the
employer has no obligation to restore the employee if the
employment term . . . is over and the employer would not otherwise
have continued to employ the employee."  29 C.F.R. § 825.216(a)(3);

see also 29 C.F.R. § 825.209(f) (employer's obligation to maintain benefits and restore employee ceases when among other things employment relationship ends).

That is the case here. Felix was the Director when she took FMLA leave and she thus had the right to return to that position as if she had not taken leave, *as long as her position existed*. Because the Board did not vote to reappoint the plaintiff to continue in her position after her term expired on December 31, 2013, and because she did not attempt to return to work until weeks after that date, there was no longer any position for her to return to and the Town consequently had no obligation to restore her to the Director's position or any other position. *See e.g., Bellone v. Southwick-Tolland Reg'l Sch. Dist.,* 748 F.3d 418, 424-25 (1st Cir. 2014) (no obligation under the FMLA to reinstate employee to his or her previous position, or even to equivalent position, after the employee's period of leave expires); *see also Throneberry v. McGehee Desha Cty. Hosp.,* 403 F.3d 972, 977-78 (8th Cir. 2005) (no violation of employee's FMLA rights if the employer would have terminated employment for lawful reasons unrelated to the employee's leave). The defendants are thus entitled to summary judgment on this portion of the plaintiff's FMLA claim.

## 2. Retaliation

Regarding the second prong of the plaintiff's FMLA claim, a plaintiff alleging retaliation for taking FMLA leave must establish that she availed herself of a protected FMLA right, that she was adversely affected by an employment decision, and that there was a causal connection between her protected conduct and the adverse employment action. *Carrero-Ojeda*, 755 F.3d at 719 (citing *Orta-Castro v. Merck Sharp & Dohme Química P.R. Inc.*, 447 F.3d 105, 107 (1st Cir. 2006)). Where, as here, a plaintiff presents only circumstantial evidence of retaliation, retaliation claims are analyzed under the same *McDonnell Douglas* burden-shifting framework used to assess discrimination claims. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation. *McDonnell Douglas Corp., 411 U.S. at 802.* If so established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. *Id*. If the employer succeeds in doing so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason was not the true reason for the employment decision. *Id*. at 803.

Applying that framework here, the plaintiff's claim fails because she cannot make out a *prima facie* case of retaliation. Regarding the first element, it is undisputed that the plaintiff availed herself of a protected FMLA right when she took leave from October 28, 2013 to January 20, 2014. Regarding the second element, the plaintiff alleges that she suffered adverse employment decisions when the Board failed to vote to reappoint her, and when the search committee failed thereafter to select her to interview for the Director's position. The court will assume for present purposes that each of these events constitutes an adverse employment decision.[3] But even viewing the evidence in a light most favorable to her, Felix cannot establish a causal connection between her taking FMLA leave and her failure to be reappointed to or selected to interview for the Director position. That is because, most simply put, she has not adduced any evidence

---

[3] With respect to the failure to reappoint the plaintiff after her term ended, the court notes that the Board did not affirmatively vote to decline to reappoint the plaintiff; rather, the Board simply did not vote. This distinction is arguably meaningful because the plaintiff has not produced any evidence that the Board was actually obligated to hold a vote, although holding a vote may have been the custom or practice, and this court has not been directed to any decision finding an employer's failure to act where it had no obligation to act to be an adverse employment decision for FMLA purposes. That being said, the court is mindful that the failure to hold a vote here arguably was, in context, tantamount to a decision to decline to renew the plaintiff's employment. With respect to the search committee's failure to interview the plaintiff for the vacant Director position, the plaintiff was technically no longer a Town employee at the time she applied but the First Circuit has held that the FMLA may also protect prospective employees who complain that they were not hired because they had used FMLA leave in the past. *See Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1 (1st. Cir. 1998).

to support the allegation that the Town acted as it did to retaliate against her for taking protected leave.

On the contrary, the record reflects that Felix and the COA had a contentious relationship that began at least several months before she requested FMLA leave, punctuated by the COA's recommendation in the spring of 2013 that the Board not reappoint her for another term. Indeed, the fact that the Board subsequently voted in June 2013 to reappoint the plaintiff, but for only a six-month term rather than the typical year-long term suggests that she was, for all intents and purposes, on probation and already in a precarious position when she took FMLA leave in October 2013.

There is also no indication that Fennessy as Town Administrator held the plaintiff's taking of protected leave against her, particularly where he immediately approved the plaintiff's leave request for the maximum 12-week period and the record is bereft of any suggestion he thereafter held her leave-taking against her.

In that regard, the only reference in the record reflecting some official Town discussion of the plaintiff's potential reappointment after she took FMLA leave comes from the minutes of the Board's November 5, 2013 meeting, held approximately one week after the plaintiff went out on leave. Those minutes are hardly inflammatory. Board member Richard Arruda "asked that the matter

16

of the Director of Elder Affairs six-month appointment be put on the next agenda to discuss what approach to take. [Board member and defendant] MacFarlane stated that she did not think it was a good idea and that Mr. Fennessy should check with Labor Counsel." It is not clear why MacFarlane did not believe discussing the plaintiff's reappointment would be a good idea. Possibly, it was because of uncertainty over how to proceed where Felix was at the time out on leave, hence the suggestion that Fennessy seek legal advice. Regardless, the record does reflect that the Town's counsel did contact the plaintiff's counsel in January 2014 to discuss whether and when she planned to return to work. As noted above, those communications appeared to expose the lawyers' mutual unawareness that the plaintiff's position had already expired at the end of the previous month. But because those communications also contemplated their understanding that the plaintiff might soon return to work, they tend to undermine the plaintiff's contention that the Town sought to rid itself of her for having taken leave.

In sum, the record chronicles the precipitous breakdown of the parties' relationship from the spring of 2013 into early 2014 and suggests that it was this factor more than any other that led to the Board's failure to vote to reappoint the plaintiff at the end of December 2013. Even if the record is not definitive on

this issue, the plaintiff has failed to produce sufficient evidence to create a genuine issue of dispute as to whether the failure to reappoint her was retaliation for her taking protected FMLA leave.

To be sure, the Town declined subsequently to interview Felix for the Director position. Again, though, and for essentially the same reasons discussed above, the record suggests that poor chemistry rather than retaliation was behind the Town's actions, and the plaintiff has failed to adduce evidence to the contrary that it was because she took protected leave.

The defendants therefore are entitled to summary judgment on the plaintiff's FMLA claims.

## B.    The Whistleblower Claim

The plaintiff contends that the defendants retaliated against her for reporting purportedly unlawful conduct of other Town officials, in violation of Massachusetts' whistleblower protection statute, M.G.L. c. 149, § 185. Presumably, the plaintiff proceeds under subsection (b)(1) of that statute, which prohibits an employer from retaliating against an employee who discloses to a supervisor "an activity, policy or practice of the employer or public body which the employee reasonably believes is in violation of the law." M.G.L. c. 149, § 185(b)(1). The employee also must show that her whistleblowing "played a substantial or motivating part in the retaliatory action." *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 303 (1st Cir. 2014) (quoting *Welch v. Ciampa*, 542 F.3d

927, 943 (1st Cir. 2008). The plaintiff contends that the defendants retaliated against her for reporting to Fennessy and/or the Town's counsel that Croce's wife had taken paid vacation as a part-time employee, and that Randall was not paying for meals at the Senior Center.

As it relates to Randall, the record reflects that the plaintiff complained to Fennessy in an email that Randall had on two prior occasions eaten a meal at the Senior Center without paying for the meal, once the prior week when he entered "through the kitchen delivery door and asked for a meal" and another time during a "Senior Olympics" event. Assuming that complaining about such conduct could suffice to serve as the basis for a claim under the statute, it fails to do so here because the Town did not know of Randall's conduct before the plaintiff's email and the conduct at issue therefore was not "an activity, policy or practice *of the employer*." *See Tyron v. MBTA*, No. SUCV201402654, 2016 WL 5874408, at *3 (Mass. Super. Ct. Aug. 17, 2016) (dismissing claim where plaintiff "blew the whistle" on fellow employees, not on the employer).

As it relates to Croce's wife, the plaintiff in or around August 2010 learned that her predecessor had allowed Croce's wife to take a week off each year with pay, and she reported the same to the Town through an oral discussion with the acting town

administrator.  Plaintiff's Exh. 1, Nancy Howlett Depo, at pg. 78-79.  This conduct also cannot be the basis of a whistleblower claim here because section (c)(1) of the whistleblower statute requires that notice of the improper activity be brought to the employer's notice "by written notice" and there is no evidence that the plaintiff so complied.  *See* M.G.L. c. 149, § 185(c)(1).

Independently, the plaintiff has not adduced any evidence to support her assertion that the defendants failed to reappoint her to her position or to interview her thereafter in retaliation for having complained about Randall and/or Ms. Croce.  Her speculation to that effect is not sufficient to create a dispute of material fact.  *See Shea v. Emmanuel College*, 425 Mass. 761, 763-64 (1997).  Summary judgment is therefore appropriate on this claim.

### C.    The M.G.L. c. 151B Claims

Under Chapter 151B, an employer may not "dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of [her] handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation." M.G.L. c. 151B, § 4(16).  Felix alleges that she suffered from anxiety and depression, which the First Circuit has recognized as mental impairments, *see Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 20 (1st Cir. 2004), and that the defendants discriminated against her on the basis of that

20

disability where they (1) treated her less favorably during her employment and failed to reasonably accommodate her disability, (2) terminated her by failing to vote to reappoint her, and (3) failed thereafter to consider her for the vacant Director position.

Regarding the first prong of this claim, the plaintiff has not adduced any evidence to suggest that any defendant treated her differently at any time before she took FMLA leave because of a perceived or actual disability. On the contrary, assuming *arguendo* that the plaintiff was suffering from a mental health related disability before she requested FMLA leave in late October 2013, there is no suggestion anywhere in the record that any defendant knew of or had a basis to know of that condition. It follows that the plaintiff cannot show that any defendant discriminated against her at any time before she took medical leave.

Regarding the Board's failure to vote to reappoint the plaintiff as her term expired, the record is similarly devoid of evidence suggesting that the Board (or any other defendant) was motivated by a discriminatory animus. Indeed, the record shows that the Board clearly had already been contemplating the possibility of ending the plaintiff's tenure months before she took FMLA leave, as evidenced by its May 2013 decision to extend the plaintiff's term by only six months rather than a year, a decision which notably followed the COA's recommendation that the

plaintiff's term not be renewed at all. The record thus reflects that various Town employees had interpersonal conflicts with the plaintiff and had already expressed an objection to her reappointment months before she took leave or otherwise signaled that she might be suffering from a handicap. Even assuming that members of the Board had reason to know by December 2013 that the plaintiff was suffering from a mental health related condition, the plaintiff simply has not produced any evidence to suggest that the Board failed to hold a vote on her reappointment because of that condition, or to rebut the notion that personal conflict more than anything else accounted for the defendants' actions (or inaction).

Turning then to the last part of her 151B claim, the plaintiff contends that the defendants failed to interview her for the Director position because they perceived that she suffered from a handicap. In order to prevail on this claim the plaintiff must show that: (1) she suffers from a "handicap," (2) she was a "qualified handicapped person," that is, she was capable of performing the essential functions of her job with reasonable accommodation, and (3) she was not hired (or interviewed) solely because of her handicap. *Mulloy v. Acushnet Co.*, 460 F.3d 141, 154 (1st Cir. 2006) (citing *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 859 (1997)). The plaintiff cannot make this showing on

this record because she cannot show she suffered from a handicap within the meaning of chapter 151B.

Chapter 151B defines a "handicap" as (a) a physical or mental impairment which substantially limits one or more major life activities, (b) a record of having such an impairment, or (c) being regarded as having an impairment which substantially limits one or more major life activities. M.G.L. c. 151B, § 1(17). The plaintiff contends that she was "regarded as" having an impairment here and, presumably, contends that the "major life activity" affected by her perceived mental health related impairment was her ability to work. *See* M.G.L. ch. 151B § 1(20) (including "working" in the definition of "major life activities"). Where "working" is the major life activity at issue, a plaintiff must "demonstrate not only that the employer thought [s]he was impaired in [her] ability to do the job held, but also that the employer regarded [her] as substantially impaired in 'either a class of jobs or a broad range of jobs in various classes.'" *Sullivan v. Neiman Marcus Grp., Inc.*, 358 F.3d 110, 117 (1st Cir. 2004) (quoting *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999)); *Izzo*, 171 F. Supp. 3d at 9; *Murray*, 2013 WL 5202693, at *6.

Here, the court has not found or been directed to any specific evidence in the record suggesting that any town official had any concerns that the plaintiff, as a result of a perceived handicap,

would not be able to perform her actual job or other similar positions.

Summary judgment is therefore appropriate on the plaintiff's chapter 151B discrimination claims.[4]

---

[4] The plaintiff makes two additional 151B related claims meriting brief attention. She contends first that the defendants violated chapter 151B when they "requested information about her disability" and required her to "answer medical questions" as conditions for being interviewed for the vacant Director position. M.G.L. c 151B, § 4(16) prohibits employers from "mak[ing] preemployment inquiry of an applicant as to whether the applicant is a handicapped individual or as to the nature or severity of the handicap," but it is unsettled whether this language provides for a private cause of action. *See Martino v. Forward Air, Inc.*, 609 F.3d 1, 4 (1st Cir. 2010). Assuming a private cause of action is available, the claim fails here because any inquiry was immaterial in context. As the Court noted in *Martino*, it would, assuming a cause of action exists, be insufficient to merely show a "technical violation" of the statute by asking preemployment questions about disability; rather, a plaintiff would need to show some resulting harm. *Id.* at 5. In the present case, the evidence on this issue suggests that any violation was technical, and that the plaintiff did not suffer any ostensible harm. The evidence on this issue consists of a brief email exchange between the Town's counsel and the plaintiff's counsel shortly following the end of the plaintiff's FMLA leave. The Town's counsel informs the plaintiff's counsel that the plaintiff can forward to the Town a list of any accommodations she might need along with her request to be reappointed to her position. Counsel further advises that any discussions the Town might have regarding accommodations would take place out of the public eye, between the counsel and Town Administrator (Fennessy). When the plaintiff's counsel responds by saying that the plaintiff "would like to continue as Director," the Town's counsel clarifies that she would have to reapply where her current appointment had ended, and asks whether the topic of accommodations is no longer an issue where the plaintiff's counsel did not mention it. In the court's view, this exchange was innocuous and does not rise to the level of a preemployment inquiry within the meaning of the statute. Moreover, there is no evidence that the Town's counsel and Fennessy discussed the issue of accommodations, and Fennessy testified that the Town's counsel was not even involved in the selection process. Plaintiff's Exh. 14, Fennessy Depo, at pg. 123.

Second, the plaintiff contends that the defendants failed to provide her with a reasonable accommodation, but this claim is unavailing because the record clearly shows that the plaintiff never requested an accommodation. *See Leach v. Comm'r of the Mass. Rehab. Comm'n*, 63 Mass. App. Ct. 563, 567 (2005) (noting that an employer is not obligated to attempt to accommodate a handicapped employee until the employee brings her needs for an accommodation to the employer's attention); *see also Faiola v. APCO Graphics, Inc.*, 629 F.3d 43, 47 (1st Cir. 2010) (request for accommodation must be "direct and specific" and "must explain how the accommodation is linked to the plaintiff's disability").

**D.   The State Common Law Claims**

The plaintiff alleges IIED, NIED, and intentional interference with advantageous relations but these claims are barred.

The emotional distress claims are barred because the Workers' Compensation Act (WCA) bars common law tort claims for injuries sustained in the course of employment.  M.G.L. c. 152, § 26; *see Andresen v. Diorio*, 349 F.3d 8, 16 (1st Cir. 2003).  The bar covers "any injury that arises out of the employment relationship regardless of whether it occurs during the precise period of employment," and applies to fellow employees and supervisors who are alleged to have committed the tortious act, so long as they were acting within the scope of employment.  *Id.* at 16; *Anzalone v. Mass. Bay Transp. Auth.*, 403 Mass. 119, 124-25 (1988).  There is no dispute that the plaintiff received workers' compensation benefits for the emotional distress injuries she experienced while working for the Town, and she has not presented evidence that any of the individual defendants were acting outside the scope of employment.  She is, accordingly, barred from bringing common law claims to recover for the same injuries.  *See* M.G.L. c. 152, § 26; *see also Andresen*, 349 F.3d at 16.

The plaintiff's intentional interference claim is also barred because the Massachusetts Tort Claims Act (MTCA) bars claims

against public employers and employees for intentional torts. M.G.L. c. 258, § 10(c); *Saltzman v. Town of Hanson*, 935 F. Supp. 2d 328, 350 (D. Mass. 2013). Again, the plaintiff has not presented any evidence that the individual defendants were acting outside the scope of employment, or in their personal capacities.

Accordingly, summary judgment is appropriate on the plaintiff's common law claims.

## VII. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Dkt. No. 58) is GRANTED. Summary Judgment will be entered on all claims in the plaintiff's amended complaint.

*SO ORDERED.*

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: July 8, 2019